IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RICHARD N. ABRAMS § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:10-CV-482-Y |
| § | |
| BANK OF TEXAS, N.A. § | |

ORDER AFFIRMING BANKRUPTCY
COURT'S AWARD OF ATTORNEYS' FEES

On April 21, 2010, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth division ("the bankruptcy court"), entered judgment awarding appellee Bank of Texas, N.A. ("Bank of Texas"), attorneys' fees and costs in the amount of $45,153.94 that Bank of Texas incurred defending a state-court action and adversary proceeding initiated by appellant Richard Abrams. Abrams now appeals that judgment. After review, the Court concludes that the bankruptcy court did not err when it awarded attorneys' fees and costs to Bank of Texas pursuant to section 514 of the underlying indenture agreement and section 315(e) of the Trust Indenture Act of 1939 ("the Indenture Act"), 15 U.S.C.A. § 77aaa-77bbbb (West 2010). Accordingly, the Court will affirm the bankruptcy court's award of attorneys' fees.

I. Background

On March 31, 1998, Surety Capital Corporation ("Debtor") entered into an indenture agreement with Harris Trust and Savings Bank ("Harris") under which Debtor issued certain convertible subordinate notes ("the notes") in the aggregate principal amount

of $4,350,000.  After Debtor issued the notes, Bank of New York Midwest Trust Company ("Bank of New York") succeeded Harris as trustee under the indenture.  On February 6, 2007, Bank of Texas replaced Bank of New York as successor trustee.[1]

On December 21, 2007, Debtor filed a chapter 11 bankruptcy petition with the bankruptcy court.  Abrams, as holder of a portion of the notes, filed a proof of claim in Debtor's case.  During the course of the bankruptcy proceedings, the bankruptcy court entered two orders instructing Debtor to pay Bank of Texas certain sums for distribution to the holders of the notes pursuant to the March 1998 indenture agreement.  The first of those orders was for the payment of principal under the notes and the second was for the payment of interest that had accrued on the notes but not been paid.  As a result of those orders, Abrams received $665,053.79 in principal and interest payments, and Bank of Texas retained attorneys' fees and costs for its services as trustee.[2]  At no time during the pendency of Debtor's bankruptcy case did Abrams object to Bank of Texas's conduct in connection with its distribution of payments to

---

[1] Abrams disputes Bank of Texas's status as trustee prior to February 6, 2007. (Appellant Br. 11-12.)

[2] As the Court will explain, Abrams did not object to Bank of Texas's retention of fees and costs during the bankruptcy proceedings; instead, Abrams challenged the fees in a subsequent state-court action.

Abrams or its retention of fees for its work as trustee.[3]  Debtor's chapter 11 plan was confirmed on October 3, 2008, and its case was closed on April 16, 2009.

A few months after the close of Debtor's bankruptcy case, Abrams filed an action in state court to recover the attorneys' fees and costs that Bank of Texas retained for the work it performed in Debtor's case prior to February 6, 2007, a period during which, according to Abrams, Bank of Texas was not "legally" trustee.[4]  It was Abrams's contention that prior to February 6, 2007, only certain individual noteholders had retained Bank of Texas's services, and only those noteholders should have had to bear the cost of Bank of Texas's pre-February 6 services.[5]  Thus, Abrams argued, the attorneys' fees and costs that Bank of Texas incurred during this time were not recoverable under the indenture agreement.  Abrams sought a declaratory judgment to that effect, as well as damages.

Subsequently, Bank of Texas filed an emergency motion to

---

[3]  Apparently, Abrams's sole objection to the plan did not concern the issues raised in his state-law action or the corresponding adversary proceeding described below.  (R. at 339.)

[4]  Abrams still contends as much.  (Appellant Br. 11-12.)

[5]  Abrams's original state-law petition and his amended complaint point to February 6, 2008, as the date on which Bank of Texas "legally" became trustee. (R. at 98, 123.)  Given, however, that Abrams's appellate brief refers to February 6, 2007, as the proper date, it appears that Abrams's reference to February 6, 2008, was a clerical error. (Appellant Br. 11.)  This conclusion is equally clear from the transcript of the February 22, 2010, hearing before the bankruptcy court.  (R. at 385.)

3

reopen Debtor's bankruptcy case, and the case was reopened on August 4, 2009. Bank of Texas then removed Abrams's state-law action to the bankruptcy court and, upon initiation of the adversary proceeding, filed a motion to dismiss Abrams's state-law claims. The bankruptcy court granted the motion after determining that *res judicata* barred Abrams's state-law claims and that Abrams should have raised his objections prior to confirmation of Debtor's plan.

Following dismissal, Bank of Texas filed a motion to recover the attorneys' fees and costs it incurred defending Abrams's state-law action and corresponding adversary proceeding. After concluding that section 514 of the indenture agreement and section 315 of the Indenture Act provide for such fees, the bankruptcy court granted Bank of Texas's motion and ordered Abrams to pay Bank of Texas $45,153.94 in attorneys' fees and costs. Abrams thereafter filed the instant appeal.

II. Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error. Bankr. R. 8013; *Matter of Missionary Found. of Am.*, 818 F.2d 1135, 1142 (5th Cir. 1987). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003)

4

(quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)). In reviewing the bankruptcy court's findings, the district court "must give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.* (citations omitted) (internal quotation marks omitted). The bankruptcy court's conclusions of law, however, are subject to *de-novo* review. *Fritiofson v. Alexander*, 772 F.2d 1224, 1239 (5th Cir. 1985).

III. Discussion

Section 514 of the March 1998 indenture agreement allows the trustee to recover the costs of defending a suit brought against it for its acts or omissions as trustee "in the manner and to the extent provided in the Trust Indenture Act." (R. at 10; Appellee Br. 9.) Section 315(e) of the Indenture Act, in turn, provides that, "in any suit against the trustee for any action taken or omitted by it as trustee," a court may "in its discretion assess reasonable costs, including reasonable attorneys' fees against any party litigant in such suit." 15 U.S.C.A. § 77ooo(e). Section 315(e) then states that it does not apply to (1) "any suit instituted by any indenture security holder . . . holding in the aggregate more than 10 per centum in principal amount of the indenture securities outstanding" or (2) "any suit instituted by any indenture security holder for the enforcement of the payment of

5

the principal of or interest on any indenture security." *Id.* Moreover, before awarding fees under 315(e), a court must give "due regard to the merits and good faith of the claims or defenses" of the party against whom costs are to be assessed. *Id.*

The bankruptcy court exercised its discretion to award attorneys' fees and costs to Bank of Texas after concluding that none of the exceptions that preclude a fee award under 315(e) applied. Specifically, the bankruptcy court concluded that (1) Abrams was not a holder of ten per cent of the total notes outstanding and (2) Abram's suit was not one "for the enforcement of the payment of the principal of or interest on a[] indenture security." (R. at 13-17.) The bankruptcy court also found that while Abrams's conduct in bringing the state-court action did not rise to the level of bad faith, it also did not support a finding of good faith.

On appeal, Abrams makes essentially four challenges to the bankruptcy court's decision to award attorneys' fees and costs to Bank of Texas. First, Abrams asserts generally that the bankruptcy court erred in awarding attorneys' fees and costs to Bank of Texas because no exception to the "American Rule" of attorneys' fees exists in this case. Second, Abrams argues that the bankruptcy court erred by awarding fees to Bank of Texas without first

6

determining whether Bank of Texas was a "prevailing party."[6] Third, Abrams challenges the bankruptcy court's conclusion that Abrams's state-law action was not initiated "for the enforcement of the payment of the principal of or interest on an[] indenture security."[7] And finally, Abrams contends that the bankruptcy court erred by failing to find that Abrams brought his state-law action in good faith.

    A.  Abrams's "American Rule" Argument

"In the United States, parties are ordinarily required to bear their own attorney's fees--the prevailing party is not entitled to collect from the loser. Under this 'American Rule,' we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home, Inc. v.*

---

[6] At one point in his brief, Abrams states that "[t]he [b]ankruptcy [c]ourt erred in concluding Bank of Texas was a 'prevailing party' as that term is defined under the applicable fee-shifting statute." (Appellant Br. 8.) The Court finds this statement confusing because the bankruptcy court made no such finding and the term "prevailing party" is not mentioned--let alone defined--in section 315(e). *See* 15 U.S.C.A. § 77ooo(e). Given the context of the statement, along with other statements in the brief, it is evident that Abrams is, in essence, challenging the bankruptcy court's failure to include a "prevailing-party" requirement in its analysis.

[7] Abrams does not challenge the bankruptcy court's conclusion that Abrams was not a holder of ten per cent of the outstanding shares at the commencement of his state-law action. Abrams does argue, however, that "the provisions of Section 315(e) simply do not apply if the Adversary suit was commenced by an indenture security holder." To the extent that Abrams is suggesting that being an indenture security holder is, in and of itself, sufficient to receive protection from a fee award under section 315(e), Abrams is mistaken. Section 315(e) states that, in order to receive protection from a fee award under section 315(e), an indentured security holder must either (1) hold ten per cent annum of all outstanding shares or (2) file its suit for the purpose of enforcing payment of principal or interest on the notes. *See* 15 U.S.C. § 77ooo(e). Given that Abrams has not challenged the bankruptcy's conclusion with regard to the former, the Court need not address it. With regard to the latter, the Court will address that issue below.

*W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001) (citations omitted) (internal quotation marks omitted). "This default rule can, of course, be overcome by statute. It can also be overcome by an 'enforceable contract' allocating attorney's fees." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Electric, Co.*, 549 U.S. 443, 448 (2007) (citations omitted).

In the instant case, the American Rule is overcome by both a statute and an enforceable contract. The bankruptcy court based its decision to award fees on section 315(e) of the Indenture Act via section 514 of the indenture agreement. Indeed, Abrams himself relies on section 315(e)'s good-faith language to argue that he should receive protection from having to pay Bank of Texas's attorneys' fees and costs. It is true that if the Court were to determine that section 315(e) does not apply, then the American Rule would apply by default. As the Court will explain, however, section 315(e) does apply, which means that the American Rule does not. *See Travelers*, 549 U.S. at 448.

B.  Abrams's "Prevailing-Party" Argument

According to Abrams, before the bankruptcy court could properly award fees to Bank of Texas, it had to "first ascertain if Bank of Texas [was] a 'prevailing party.'" (Appellant's Br. 18.) Abrams cites a number of cases that purportedly support this proposition; but those cases involve fee-shifting statutes from other contexts. (*Id.* at 18-19.) Section 315(e), unlike various

other fee statutes, does not contain any language limiting the recovery of attorneys' fees to prevailing parties. *Compare* 15 U.S.C. §77ooo(e), *with* 42 U.S.C.A. § 1988(b). Abrams offers no authority or explanation as to why a prevailing-party requirement should apply in the instant context, and the Court sees none.[8] Therefore, in the Court's view, Abrams's argument that the bankruptcy court should have conducted "prevailing-party" analysis before awarding fees under section 315(e) is without merit.

C. Abrams's Section 315(e) Argument

In his brief, Abrams characterizes his lawsuit as one "instituted for the enforcement of the payment of unpaid interest due on the [n]otes." (Appellant Br. 22.) As previously observed, section 315(e) states that its provision for fee awards "shall not apply to any suit instituted by any indenture security holder for the enforcement of the payment of . . . interest on any indenture security." 15 U.S.C.A. § 77ooo(e). In his recitation of the facts, Abrams states that he filed his state-court action "seeking, *inter alia*, a declaratory judgment that [Bank of Texas], as Substitute Trustee of the Indenture, did not follow the provisions and terms of [Debtor's plan] in that unpaid accrued interest due

---

[8] This is not to say that Bank of Texas's level of success is irrelevant in deciding whether Bank of Texas should recover attorneys' fees. The Court's conclusion is simply that attaining "prevailing-party" status is not a prerequisite to recovery. In the adversary proceeding, Bank of Texas advocated for dismissal of Abrams's claims, and the bankruptcy court subsequently dismissed them. Thus, if anything, consideration of Bank of Texas's level of success in the adversary cuts in favor of the fee award.

9

under the Notes was not paid in full because payment of certain costs of collection were not allocated in accordance with the Plan and Indenture Agreement." (*Id.* at 7.) Thus, according to Abrams, Bank of Texas is not entitled to recover attorneys' fees because 315(e)'s "suit-to-recover-interest" exception precludes his lawsuit from becoming the subject of a fee award.

However, the characterizations of Abrams's state-law claims contained in his brief are at odds with the language contained in his original state-court petition and amended complaint. From both the petition and the amended complaint, it evident that Abrams's lawsuit was one to recover the fees that Bank of Texas retained for the work it performed prior to February 6, 2007--not one to recover unpaid interest on the notes. For example, his petition states that "Plaintiffs [sic] request that the Court declare that attorney's fees and costs of collection incurred by [Bank of Texas] prior to [Bank of Texas's] being legally appointed Substitute Trustee of the Indenture are not recoverable . . . ." (R. at 98.) Similarly, the amended complaint sought a "[j]udgment against [Bank of Texas] for damages resulting from the conduct of [Bank of Texas]." (R. at 132.) Abrams's causes of action, which included "breach of contract," "negligence/willful misconduct," and "breach of fiduciary duty/conspiracy," were based on Bank of Texas's alleged improper conduct in apportioning costs and retaining fees. None of these causes of action can fairly be characterized as suits

for principal or interest due on the notes. As the bankruptcy court noted, "[w]hile the effect of a judgment in favor of Abrams could have been a distribution of interest to the [h]olders of the [n]otes, that was not the purpose of his suit." (R. at 17.) With the benefit of hindsight, Abrams characterizes his state-law action as a suit to recover interest under the notes. The bankruptcy court correctly concluded, however, that this was not such a suit and that section 315(e) does not prevent the awarding of fees to Bank of Texas.

D. Abrams's Good-Faith Argument

Lastly, Abrams challenges the bankruptcy court's conclusion that while Abrams had not acted in bad faith, he also had not acted in good faith.[9] According to Abrams, the evidence in this case compelled a finding of good faith. But the bankruptcy court noted several reasons for its refusal to make a good-faith finding in this case. For example, the bankruptcy court found that Abrams filed his lawsuit after confirmation of Debtor's plan even though he had reason to know of the issues raised in the lawsuit prior to confirmation. Moreover, after noting that other parties had filed objections to Debtor's plan, the bankruptcy court observed that

---

[9] A bankruptcy court's finding as to whether a bankruptcy petition has been filed in good faith is reviewed for clear error. *See In re Stanley*, 224 F. App'x 343, 347 (5th Cir. 2007); *In re Elmwood Development Co.*, 964 F.2d 508, 510 (5th Cir. 1992). Likewise, a bankruptcy court's finding as to whether an adversary proceeding has been brought in good faith is presumably reviewed under a clear-error standard as well.

11

"Abrams was very active in Debtor's bankruptcy case" and that "at a minimum his conduct amounted to inexcusable neglect." (R. at 12.) Consequently, the bankruptcy court found that Abrams knew, or at least should have known, that his claims were meritless at the time he filed suit.

Even assuming, however, that the bankruptcy court had found that Abrams acted in good faith, such a finding would not have prohibited the bankruptcy court from awarding attorneys' fees under the Indenture Act. Section 315(e) simply requires that the court give "due regard to the merits and good faith of the claims or defenses." 15 U.S.C.A. § 77ooo(e). Thus, a finding of good faith is simply a factor for the court to weigh when deciding whether to award fees. Abrams had numerous opportunities to challenge Bank of Texas's apportionment of fees and costs prior to confirmation of the plan. Yet Abrams made no objections. Abrams also had reason to know that the time had passed for him to raise the issues contained in his lawsuit. By filing a meritless lawsuit, Abrams forced Bank of Texas to incur unnecessary legal fees. It was, therefore, a proper exercise of discretion for the bankruptcy court to award Bank of Texas attorneys' fees under the indenture agreement and the Indenture Act.[10]

---

[10] Abrams does not challenge the amount of the bankruptcy court's fee award. Even so, the Court notes that the bankruptcy court did not award all of the fees that Bank of Texas requested. Rather, the bankruptcy court made a finding as to the amount of time Bank of Texas spent preparing its motion for attorneys' fees and reduced the fee award by that amount. (R. at 18.) The Court

IV. Conclusion

Based on the foregoing, the Court concludes that the bankruptcy court properly awarded attorneys' fees and costs to Bank of Texas pursuant to section 514 of the indenture agreement and section 315(e) of the Indenture Act. Accordingly, the bankruptcy court's award of fees and costs to Bank of Texas is AFFIRMED.

SIGNED November 12, 2010.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

concludes that the amount of fees the bankruptcy ultimately awarded was reasonable.